DAVID PRESTON *et al.*

*v.*

GILBERT A. COLBY *et al.*

*Filed at Ottawa January 25, 1886.*

1. CREDITOR'S BILL—*remedy at law—how far that remedy must be pursued, in order that equity may interpose.* A creditor's bill can not be sustained when there is no evidence tending to prove that the debtor has assets or property that can not be reached by execution, or which is covered up and kept out of the reach of creditors, or when it appears that the debtor has turned over property, real and personal, to the creditors, of sufficient value to satisfy the debt, before the filing of the bill.

2. A creditor's bill lies only when the creditor has exhausted his remedy at law. It must appear that the creditor has recovered judgment, and an execution issued thereon has been returned no property found. In other words, the theory is, in order to sustain such a bill, that the debtor has no property liable to be taken and sold in satisfaction of the judgment, on execution, but he has assets secreted or covered up, which can only be reached by bill in equity.

3. If the debtor,·after judgment has been obtained, turns out to his creditors ample property to pay the debt, if converted into money, a court of equity will not sustain a bill to reach other property transferred by the debtor to some other party, on the ground that such transfer is fraudulent.

4. A purchased of a banker real estate for $16,300, and afterward formed a partnership with B and C, for manufacturing plows, etc., and made valuable improvements upon the purchased premises, and borrowed of the banker $3000, for which the firm gave a judgment note, payable in ninety days. Afterward, A, in the absence of B, for the purpose of closing up the partnership business, obtained a deed for the property from the banker, and gave

his notes, secured by mortgage, on the same, for $19,500, which included the purchase money, the interest thereon, and the $3000 firm note, which, however, was retained, and judgment confessed thereon. A, at the same time, turned over to the banker, as a security for the debt, all the personal property of the firm. The banker, after such transfer, filed a creditor's bill, seeking to reach a deposit of B in his bank, which he had transferred by check to D, alleging fraud. After the filing of the bill the personal property of the firm so transferred was sold and converted into money, realizing about $1200, and it appeared that the real estate so mortgaged was of the value of $30,000: *Held*, that the creditor's bill was premature, as the mortgaged property should first have been sold, even though a judgment had been recovered against A, after the purchase and before the giving of the mortgage.

5. PARTNERSHIP—*as to individual and partnership property—how to be applied, as respects individual and partnership indebtedness.* The individual property of a partner is liable to be taken for the debt of his firm, when his creditors are not injured thereby and make no complaint. But when the rights of firm creditors and individual creditors are involved, the firm assets are not liable to be taken for individual debts until the firm liabilities are discharged, and *vice versa*.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. MORTON CULVER, for the appellants:

The officer's return of *nulla bona* on the execution, authorized the filing of the bill, though made before the return day. *Bowen* v. *Parkhurst*, 24 Ill. 257; *Bank* v. *Gage*, 79 id. 207; *Alexander* v. *Tams*, 13 id. 224; *Ballentine* v. *Beall*, 3 Scam. 206; *Miller* v. *Davidson*, 3 Gilm. 522; *Manchester* v. *McKee*, 4 id. 515.

The check upon the bank failed to pass the drawer's funds in the bank, for the reason he had not funds there sufficient to meet the same. *Munn* v. *Burch*, 25 Ill. 35; *Marine Bank* v. *Rushmore*, 28 id. 463; *Insurance Co.* v. *Stanford*, id. 168; *Bank* v. *Bank*, 68 id. 398; *Brahm* v. *Adkins*, 77 id. 263; *Coates* v. *Preston*, 105 id. 470; 2 Parsons on Notes and Bills, 78.

As to when a voluntary conveyance is fraudulent as to creditors, see *Moritz* v. *Hoffman*, 35 Ill. 553; *Bridgeford* v. *Riddel*, 55 id. 261; *Pratt* v. *Myers*, 56 id. 23; *Gridley* v.

*Watson,* 53 id. 156; *Matthew* v. *Jordan,* 88 id. 602; *Patrick* v. *Patrick,* 77 id. 555; *Emerson* v. *Bemis,* 69 id. 537; *Mitchell* v. *Byrns,* 67 id. 522; *Sweeney* v. *Damron,* 47 id. 450.

Mr. GEORGE F. WESTOVER, for the appellees:

Complainants were bound to use the security in their hands placed there for the purpose of paying the partnership debt of Colby, Gardner & Co., before they could take legal proceedings to reach the individual property of Gardner.

The original bill, seeking a discovery of assets, was properly dismissed, there being no evidence to sustain it, and the supplemental bill was properly dismissed for the same reason.

The transfer of the money by Gardner was not fraudulent, in fact or in law, as it was made two months before this suit was brought.

Complainants' debt is against the firm of Colby, Gardner & Co. The money in question was of the individual property of Gardner, deposited, subject to his check, with complainants, as bankers, and complainants have in their possession sufficient of the firm property with which to pay their debt, and the law requires them to first exhaust that before resorting to the property of the individual members of the firm. Having such property, assets and securities within their own possession and control, equity will not reach out to seize another fund upon which other parties have a claim, particularly when it is shown that they have made no effort to convert their securities into money.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a creditors' bill, brought by David Preston, Samuel A. Kean and James Payne, a firm engaged in banking business, in Chicago, under the name and style of Preston, Kean & Co., against Gilbert A. Colby, Clinton H. Colby and Schuyler S. Gardner, a firm doing business as Colby, Gardner & Co. The bill was based upon a judgment, by confession,

rendered in the circuit court of Cook county, December 17, 1881, in favor of the complainants, and against the defendants, for the sum of $3320.67. The bill was in the usual form. It sought discovery, under oath, and prayed for an injunction and the appointment of a receiver. One of the judgment debtors, S. S. Gardner, kept an individual account in the bank of Preston, Kean & Co., and when the bill was filed he had to his credit, in the bank, $2111.46. For the purpose of reaching this sum of money, in satisfaction of the judgment, the complainants filed a supplemental bill, the material allegations of which will be set out hereafter. We will first consider the case made, or attempted to be made, under the original bill.

We find no evidence in the record to sustain the original bill. No testimony was offered tending to prove that Colby, Gardner & Co. had property or assets which could not be reached by an execution, or that was concealed or covered up, and kept out of the reach of creditors; but on the other hand, the evidence did show that all of the property, both real and personal, belonging to Colby, Gardner & Co., before the filing of the bill, had been turned over by one member of the firm, to the complainants, to secure the indebtedness complainants held against the firm. Indeed, we do not understand it to be claimed in the argument of counsel that the evidence is sufficient to authorize a decree under the allegations of the original bill. We will therefore turn our attention to the case attempted to be made under the supplemental bill, as it is manifest complainants must succeed on this branch of the case, if at all.

The supplemental bill was filed November 8, 1883, against the defendants in the original bill, and Isaac P. Coates. It alleges the filing of the original bill, and gives a statement of its contents. The bill also alleges that complainants, at the time of filing the original bill, were bankers; that Gardner, at that time, had on deposit $2111.46; that prior to that

time Gardner had attempted to assign the same to one Isaac
P. Coates, but had failed in so doing; that at the time of
filing said bill and service of injunction, Gardner was the
legal holder and owner of such deposit; that on or about
November 23, 1882, Gardner a second time, and in direct
violation of the injunction in this case, attempted to assign
said money to said Coates, by making a check therefor and
delivering said check to Coates or his agent, with the fraudu-
lent intent of assigning, in law, such deposit to Coates, so as
to hinder and delay complainants in the collection of their
judgment; that such transfer was merely colorable, and void
in equity, and simply for the purpose of assisting Gardner,
through Coates, to collect said money for his own use and
benefit; that Coates has demanded payment of said check,
which has been refused; that Coates then began suit on said
check in the Superior Court of Cook county, in his own name,
and threatens to prosecute the same to judgment; that Pres-
ton, Kean & Co. can not defend such suit successfully at law;
makes Coates a defendant to this supplemental bill, and
prays that he may be enjoined from prosecuting such suit,
from bringing other suits, and from transferring such check;
that such check be declared void; that the deposit be declared
Gardner's, and applied towards the payment of their judg-
ment.    Gardner and Coates put in answers to the supple-
mental bill, in which they denied all charges of fraud, and
set up that complainants had ample securities in their hands
belonging to the firm of Colby, Gardner & Co., to more than
pay the judgment they held against the firm.    They also set
up that before the filing of the bill, and on the 25th day of
October, 1881, Gardner had on deposit in the bank of Preston,
Kean & Co. a sum of money which he supposed amounted to
the sum of $2190; that on that date he loaned the money
to Coates, took his note for the same, and gave him a check
on the bank for the amount; that the check was presented
and payment refused.    The defendants then set up that it

31—117 Ill.

afterwards appeared that Gardner did not have as large an amount in bank as was named in the check, the true amount being $2111.46, and when it was ascertained that the bank was not legally bound to pay the check, Gardner, in order to fulfill his agreement with Coates, and to consummate the loan, gave a check for the true amount in bank.

It appears from the record, that on the 1st day of May, 1881, Gilbert A. Colby purchased of Preston, Kean & Co. certain property in Chicago, at an agreed price of $16,300, to be paid in installments, as specified in a written contract executed by the parties on that date. It also appears that G. A. Colby, S. S. Gardner and C. H. Colby, in the spring of 1881, formed a co-partnership, for the purpose of manufacturing and selling certain plows manufactured under a patent held by the parties. Written articles of co-partnership were signed by the parties on the 5th day of July, 1881. The business of the firm was carried on upon the premises in Chicago which Colby had purchased from Preston, Kean & Co., valuable improvements having been placed thereon after the firm was formed. It also appears that soon after the firm was formed, they borrowed of Preston, Kean & Co. $3000, and gave a judgment note for the amount, payable in ninety days from the date thereof. On or about the 1st day of October, 1881, in the absence of Gardner, Gilbert A. Colby, with the view of closing up the partnership business, obtained from Preston, Kean & Co. a deed of the property described in the contract of purchase. He then gave his individual notes to the firm for $19,500, secured by a deed of trust on the property. The sum so secured was made up of the following items: $16,300, purchase money for the premises; $3000, which had been borrowed from Preston, Kean & Co., and $200, back rent under the written contract of purchase. The firm note for $3000 was not, however, surrendered, but retained, and judgment confessed on it, which is the judgment attempted to be collected by this creditor's bill. At the same time, and

as a part of the same transaction, Gilbert A. Colby turned over to Preston, Kean & Co., as security for their debt, in addition to the deed of trust, all the personal property which was in the possession of Colby, Gardner & Co., so that at the time of the filing of the original bill in this case, the complainants, Preston, Kean & Co., had received from Colby, Gardner & Co., as security for their debt, all real and personal property which the firm at that time owned. Since the filing of this bill the personal property has been sold and converted into money. A part was sold by Preston, Kean & Co., and a part by a receiver appointed by the court under a bill to wind up the business of Colby, Gardner & Co. The real estate was also sold by the receiver, subject to the mortgage of Preston, Kean & Co., and purchased by Morton Culver, the attorney of Preston, Kean & Co., in the name of one Allen Breed, a resident of Iowa. But the mortgage of Preston, Kean & Co. on the real estate embraced therein, has not been foreclosed, although the property, as appears from the record, is worth $8000 or $10,000 more than the mortgage indebtedness.

In the argument the broad ground has been taken that partnership debts must be paid out of partnership assets, and separate debts out of private or individual assets. There is no doubt in regard to the rule that where the rights of firm creditors and individual creditors are involved, firm assets are not liable to be taken for individual debts until the firm liabilities are discharged, and that individual property can not be taken to pay firm liabilities until the individual debts are paid; but that rule has no application here, under the facts disclosed by the record. When the complainants obtained a judgment against Colby, Gardner & Co., the rights of no individual creditors being involved, they had the right, so far as the question raised is concerned, to subject any property belonging to the firm, or the individual members of the firm, to the payment of the judgment.

But there is another question presented which is not so free from difficulty, nor is it readily solved. It will be borne in mind that on or about the first day of October, 1881, Colby, Gardner & Co. turned over all the property owned by the firm to secure complainants' debt,—that a large portion of that property is held by Preston, Kean & Co. in the same condition that it was in when it was turned out as security. Under such circumstances, have they the right to go into a court of equity to reach assets belonging to Gardner or his assignee? The principal ground upon which a court of equity entertains a creditor's bill, is that the remedy at law has been exhausted. In order to maintain a creditor's bill it must appear that a judgment has been rendered, an execution has been issued and placed in the hands of the sheriff, and that it has been returned no property found. In other words, the theory is, that the judgment debtor has no property liable to be taken and sold in satisfaction of the judgment, on execution, but that he has assets secreted or covered up, which can only be reached by a proceeding in equity. But suppose the judgment debtor, after judgment has been obtained, turns out to his creditor ample property to pay the debt if it was converted into money, would a court of equity in such a case entertain a bill to find other property which had been transferred in some other direction? There would seem to be no necessity for a bill in such a case. Where the judgment creditor has ample property turned out to him to pay his claim, what necessity for going into a court of equity? Here the entire debt of the complainants amounts to $19,500, and some interest. Something over $1200 has been made on property sold, and the real estate embraced in the mortgage to secure the debt, as the proof shows, is worth some $30,000. All this property was voluntarily turned over to the complainants by Colby, Gardner & Co., and in our opinion equity demands that it should be exhausted before they can be permitted to invoke the aid of a court of equity for the purpose of reaching other assets.

But it is said that in 1879 one Gorham obtained a judgment against Colby, upon which the property was subsequently sold, and the sale will be good and valid except as to the sum Colby owed Preston, Kean & Co. for purchase money, which was $16,300,—that the mortgage affords no security for the balance of the $19,500 which it was given to secure. What title Gorham obtained under his judgment sale, as against the mortgage of Preston, Kean & Co., has never been determined. In *Breed* v. *Gorham*, 108 Ill. 81, it was decided that where an execution issued on a judgment in a court of record within one year from the time it was rendered, the judgment will become a lien on real estate the defendant in the judgment may afterwards, and within seven years, acquire; but nothing is decided in that case in regard to the priority of the lien of the judgment or the mortgage. That is a question which will have to be determined in a proper case between Gorham, and Preston, Kean & Co. It is but just that Preston, Kean & Co. should be required, as the property they hold is of much greater value than the debt, to convert it into money, and then, should it turn out not to be sufficient to pay their debt, it will be time enough to look after other assets by a creditor's bill.

If we are correct in the view we have taken of the case, that the filing of the bill was premature, it will not be necessary to remark upon the validity or invalidity of the transaction between Gardner and Coates.

The decision of the Appellate Court affirming the decree of the circuit court dismissing complainants' bill, will be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.