# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

### DURAND & CO.

#### *v.*

### GRAY, KINGMAN & COLLINS.

*Filed at Ottawa May 16, 1889.*

1. CREDITOR'S BILL—*prerequisites—remedy at law inadequate.* A court of equity will never lend its aid when there is an adequate remedy at law. It must, therefore, appear in a creditor's bill that a court of law is incompetent to reach the property of the defendant in execution, either by reason of its peculiar character, or by inability to discover it.

2. SAME—*the statute and the common law.* So much of section 49 of the Chancery Code as provides that when an execution issued against the property of a defendant, on a judgment at law, shall be returned unsatisfied, in whole or in part, the party suing out the execution may file a creditor's bill against such defendant and any other person, to compel the discovery of any property or thing in action, etc., introduces no new principle, and is but affirmative of the common law.

3. SAME—*execution—to what county.* To entitle a judgment creditor to maintain a creditor's bill against his debtor, he must have an execution issued to the sheriff of the county where the debtor resides and carries on business, or where he did reside when the suit was brought. If the plaintiff in the execution knows that the defendant in execution has property in a particular county, he should send an execution to that county. One should also be sent to every county in which there is a legal presumption that the defendant has property.

| 129 | 9 |
| 136 | 602 |

| 129 | 9 |
| 144 | 78 |
| 40a | 319 |

| 129 | 9 |
| 152 | 315 |
| 45a | 550 |

| 129 | 9 |
| 50a | 599 |
| 51a | 224 |
| 51a | 370 |

| 129 | 9 |
| 158 | 284 |
| 46a | 563 |

| 129 | 9 |
| 162 | 308 |
| 54a | 521 |
| 55a | 354 |

| 129 | 9 |
| 59a | 26 |
| 61a | 272 |

| 129 | 9 |
| 165 | 415 |

| 129 | 9 |
| 71a | 668 |

| 129 | 9 |
| 88a | 33 |

| 129 | 9 |
| 95a | 6328 |

| 129 | 9 |
| 97a | 1 90 |
| 98a | 1594 |

| 129 | 9 |
| 195 | 6417 |

| 129 | 9 |
| 108a | 1393 |

4.   Where the judgment is in a court which may send its final process to any county in the State, the complainant who comes into equity for relief upon the ground that he has exhausted his legal remedy, must show affirmatively, by his bill, that he has issued his execution to the sheriff of the county where the defendant resided at the time such execution was issued, or he must, by proper averments, show a sufficient and legal excuse for not sending process to that county.

5.   If a person resides and does business in the same county, it is legally presumed that he has property there liable to execution, for ownership is presumed from possession, and insolvency is exceptional, and must always be proved.

6.   SAME—*exhausting remedy at law.*   To establish that a court of law is incompetent to reach the property of the defendant in execution, it must be proved that there was a judgment at law, and that an execution was issued thereon, and that it has been returned by the proper officer unsatisfied.   The return of an execution, as to the fact of the existence or non-existence of property within the jurisdiction of the sheriff, is the highest evidence, and is conclusive.

7.   In this case, a debtor residing in Boone county, where he was carrying on the grocery business, went to Chicago, where he gave his judgment notes, in adjustment of his account, to his creditor, and also for another debt, and judgment was confessed in Cook county, and execution issued immediately to the sheriff of that county, who made a demand for payment, and returned the same unsatisfied on the same day.   The plaintiff in the execution then filed a creditor's bill, and had a receiver appointed, to whom the debtor conveyed, generally, all his property, and the receiver took possession very shortly after the debtor had given his judgment note to another creditor, upon which judgment was in like manner confessed in Cook county.   The last creditor caused execution on his judgment to issue to the sheriff of Boone county, where the goods were situated.   On cross-bill filed by the last named creditor, the court directed the receiver to pay his judgment first, in full, and the balance on that of the first creditor.   In such case, the remedy of the first named creditor was complete at law by sending an execution to Boone county.

8.   SAME—*waiver by the debtor—as to questioning proceeding by creditor's bill.*   A debtor by giving his note, and a power of attorney to confess judgment thereon, does not thereby waive his right to object to a creditor's bill filed by the payee, on the ground that proper legal steps have not been taken to collect the debt at law, by the issue of execution to the sheriff of the debtor's residence and place of business.   And the execution by the debtor of an assignment of all his property to a receiver, under an order of court, being involuntary, will not preclude him from making any objection that he might before then have made.

9.   A debtor defendant in a creditor's bill may, by his answer or pleading, waive proof of every allegation in the bill, so far as his rights are concerned, but he can waive nothing as to the rights of others of his creditors.  After the latter have recovered judgments and issued executions to the sheriff of the proper county, their liens will attach to the debtor's personal estate, though in the hands of a receiver appointed in a case, without jurisdiction of the subject matter.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

H. W. Allen was for some time engaged in a general grocery business in Belvidere, Boone county, where he resided.   He had become indebted to various parties, among others to Durand & Co. in the sum of $2117; to Levi Mason, an uncle of his, in the sum of $1400; to Gray, Kingman & Collins in the sum of $439.52; to E. B. Millar & Co. in the sum of $56.80. On the 19th of January, 1887, Allen informed one Nels Allen, a traveler for Durand & Co., that he had recently taken an invoice of his assets, and found that they exceeded his liabilities only by the sum of $500, and that he was desirous of settling his indebtedness to Durand & Co. in some way.   Nels Allen immediately communicated this information to Durand & Co., in Chicago, where they did business, and on the next day (the 20th of January) they sent Nels Allen, and Mr. Helmer, an attorney at law, to H. W. Allen, at Belvidere, and they then informed H. W. Allen that they had come to settle the account of Durand & Co.   Some inquiry was made into the condition of the business of H. W. Allen, and suggestions were made as to the distribution of his assets, but he says no plan was then finally agreed upon.   He informed them that he wanted the indebtedness to his uncle, Mason, settled in preference to his other indebtedness.   Allen called in, at the time, his attorney, William R. Dodge, whom, as he says, he had previously consulted as to what he could do.   It was finally agreed that H. W. Allen, his attorney, Dodge, and one Willard, who had

in his possession the notes given by Allen to his uncle, Mason, should on the next day go to Chicago, and there meet with Durand & Co. for the purpose of adjusting their indebtedness. The parties met in Chicago, pursuant to this agreement, on the 21st of January, at the law office of Smith & Helmer, who were attorneys for Durand & Co. It was then agreed by the respective parties, that Durand & Co. should pay the indebtedness to Mason, and take the judgment note of H. W. Allen therefor, and that H. W. Allen should also execute to them his judgment note for their indebtedness. He, accordingly, then executed and delivered to Durand & Co. his two promissory notes, one for $1457, and the other for $2117.14, having annexed to each a power of attorney to confess judgment. During the day, judgment was entered in the Superior Court of Cook county, on these notes, for the aggregate sum of $3724.22, which included attorney's fees. An execution was issued upon the judgment, and placed in the hands of the sheriff of Cook county. The sheriff made demand upon Allen for payment of the execution, and he failing to pay the same, it was returned "no property found whereon to levy." Durand & Co. then filed a creditor's bill in the Superior Court of Cook county, and moved for the appointment of a receiver, making Allen alone a defendant. Allen accepted service of the notice of the motion to appoint the receiver, and his attorney, William R. Dodge, was thereupon appointed receiver. Allen then executed to Dodge a general assignment of all his property and effects, and he and Dodge went back to Belvidere on the evening of the same day, and Dodge took possession of the store. On the next day (the 22d of January) Allen gave a judgment note to Gray, Kingman & Collins for the amount of his indebtedness to them, ($439.52,) and on the 26th of the same January he gave a judgment note to E. B. Millar & Co. for the amount of his indebtedness to them, ($54.26.) But before that, and on the 24th of the same month, judgment was entered in the Superior Court of Cook county, in favor of Gray,

Kingman & Collins, and against Allen, on their judgment note, for $439.52. Execution was issued thereupon to the sheriff of Cook county, who returned the same "no property found and no part satisfied," and thereupon, on the 26th of January, 1887, an *alias* execution was issued, and delivered to the sheriff of Boone county. E. B. Millar & Co. also took judgment upon their note, and had execution issued to the sheriff of Cook county, which was returned unsatisfied. Some other judgments were also obtained against Allen, but they are irrelevant to the questions presented upon this record.

On the 31st of January, 1887, Gray, Kingman & Collins made application to the Superior Court for leave to be made defendants to the creditor's bill of Durand & Co. Leave was given, and they demurred to the bill. The demurrer was overruled, and they then filed answer and cross-bill, in which they set up their judgment, the issuing of execution to the sheriff of Cook county, and its return not satisfied, the issuing of a subsequent execution to the sheriff of Boone county, and that the same was then in the hands of the sheriff of Boone county, alleging that Durand & Co. had not exhausted their remedy at law against Allen before they filed their creditor's bill, and charging collusion between Allen and Durand & Co. The cross-bill prayed for the discharge of the receiver, and that Gray, Kingman & Collins be allowed to proceed to enforce the lien of their execution, in Boone county, upon the property of Allen, or, in case of a sale by the receiver prior to a hearing upon the cross-bill, that Gray, Kingman & Collins be decreed to have a first and prior lien upon the assets of Allen subject to execution. E. B. Millar & Co. also became parties by intervening petition. Allen entered his appearance, but failed to answer the creditor's bill, and a decree *pro confesso* was rendered against him. Answers were filed, putting in issue the material allegations of the cross-bill of Gray, Kingman & Collins. In the meantime the receiver had filed a report, and an order was made for advertisement and sale, and bids had

been received.    Gray, Kingman & Collins appeared, and opposed the sale.    After some delay, a sale was held in open court, attended by all the parties in interest, and the tangible assets were sold for $2800.    The other assets, consisting of accounts, etc., were collected by the receiver, and after paying expenses, the total assets in his hands amounted to $3542.94. The court decreed that the receiver first pay to Gray, Kingman & Collins, and to E. B. Millar & Co., the amounts due on their respective executions, and then the remainder to Durand & Co. Durand & Co. appealed from that decree to the Appellate Court for the First District, and that court affirmed the decree of the Superior Court.    The case is brought to this court by the appeal of Durand & Co. from the last named judgment.

Messrs. Frank J. Smith & Helmer, for the appellant :

The statute of 1874 on the subject of creditor's bill (sec. 49, Chancery Code) was strictly followed.    There is no requirement of the statute of Illinois that an execution shall be issued to every county in the State.    Neither is there any requirement of the statute that an execution shall be issued to every county where the defendant may have property, before such a bill may be filed.

On a return of *nulla bona,* the bill lies, although the officer may not have kept the process during its lifetime.    *Bank* v. *Gage,* 79 Ill. 207.

The right to have Durand & Co. exhaust their legal remedy before proceeding in equity, was a personal right to H. W. Allen alone, and one which he might waive.    The mere failure by him to set up the matter in his answer to the creditor's bill, was a waiver.    *Stout* v. *Cook,* 41 Ill. 448 ; *Dodge* v. *Wright,* 48 id. 382 ; *Temley* v. *Golden Censer Co.* 16 Bradw. 458.

Even in a suit at law, the defendant is bound to plead want of jurisdiction, when he is sued out of the county of his residence.    *Hardy* v. *Adams,* 48 Ill. 532 ; *Railway Co.* v. *Williams,* 77 id. 356.

Messrs. Weigley, Bulkley & Gray, for the appellees Gray, Kingman & Collins.

Messrs. Tenney, Bashford & Tenney, for the appellees E. B. Millar & Co.:

The object of a creditor's bill is to compel a discovery, and then to decree satisfaction out of any personal property, etc., "which shall be discovered." Our statute is copied from that of New York, and is simply declaratory of the common law as it then existed. *Stone Co.* v. *Wheeler*, 6 Bradw. 228.

The relief that a complainant is entitled to obtain by means of a creditor's bill, is, by the above statute, and the law as it existed prior thereto, entirely dependent upon the discovery obtained. Where there has been no discovery, there can be no relief. *Fire Ins. Co.* v. *Nat. Bank of Chicago*, 1 Bradw. 357; *Insurance Co.* v. *Nat. Bank*, 7 id. 426.

Such bill will lie, first, to discover and subject equitable assets, if the defendant have no legal assets; and second, to remove a fraudulent obstruction. Bispham's Eq. sec. 526; 3 Pomeroy's Eq. Jur. sec. 1415; *Dormeuil* v. *Ward*, 108 Ill. 216; *Preston* v. *Colby*, 117 id. 477; *Fox* v. *Moyer*, 54 N. Y. 129; *Cole* v. *Rives*, 24 Miss. 534.

Plaintiff's remedy at law must be exhausted before he can come into equity. Bispham's Eq. sec. 527; 3 Pomeroy's Eq. Jur. sec. 1415; *Albright* v. *Herzog*, 12 Bradw. 557; *Ishmael* v. *Parker*, 13 Ill. 324; *Miller* v. *Miller*, 14 N. Y. 208; *Ballou* v. *Jones*, 20 id. 629; *Preston* v. *Wilcox*, 38 Mich. 578.

The language of all the authorities is, that the legal remedy must be exhausted,—that is, no legal remedy of any kind then exists. In view of that necessary requirement which appellants must have complied with before they are entitled to come into a court of equity, can it be said, with any degree of truth, that appellants had no legal remedy left when this creditor's bill was filed, knowing, as they did, that their debtor had goods and chattels of the value of $4000, subject to exe-

cution, at his home in Belvidere, and that they could as well have had an execution issued to the county of Boone as to the county of Cook? That it was necessary to have an execution issued to that county and returned unsatisfied, as a basis for a creditor's bill, see *Ballou* v. *Jones*, 20 N. Y. 629; *Fox* v. *Moyer*, 54 id. 129; *Miller* v. *Miller*, 14 id. 208; *Preston* v. *Wilcox*, 38 Mich. 578.

It is a valid defense to a creditor's bill to show collusion between the complainant and the sheriff. *Cassidy* v. *Meacham*, 3 Paige, 311.

A creditor's bill can only be maintained as a last resort, and the complainant must show, by his bill and by his proof, that such a bill was a necessity. *Hexter* v. *Clifford*, 5 Col. 68; *Congdon* v. *Lee*, 3 Edw. Ch. 321.

Mr. Justice Scholfield delivered the opinion of the Court:

So much of section 49 of our Chancery Code (Rev. Stat. 1874, p. 203, *et seq.*,) as provides that "whenever an execution shall have been issued against the property of a defendant, on a judgment at law, * * * and an execution shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, to compel the discovery of any property or thing in action belonging to the defendant," etc., introduces no new principle, and is but affirmative of the common law. (Bispham's Eq. 2d ed. secs. 525, 526, *et seq.*; 4 Am. & Eng. Encyclopedia of Law, p. 576, *et seq.*; *Ballentine et al.* v. *Beall*, 3 Scam. 203; *Miller et al.* v. *Davidson*, 3 Gilm. 522.) Decisions, therefore, under the common law, are applicable as precedents since the enactment of this statute.

Counsel for appellants contend, that because the section referred to does not say to what county the execution shall be issued, it is only necessary to issue it to the sheriff of the county in which the judgment is rendered. Perhaps, in the absence of all circumstances showing the purpose of the issuing and

returning of the execution, that would be correct; but it is not to be assumed that the law requires such a thing to be done without a purpose. We must suppose that the rights of parties affected by the litigation were in some way to be protected thereby; and it must therefore follow, that if the purpose of issuing and returning an execution can not be subserved except by issuing and delivering the execution to the sheriff of the county where he is known, or is presumed, to have property, the contention of appellants is wrong, and the decisions of the court below right.

What, then, is the purpose of the issuing and returning of the execution? The cases are all agreed in this respect. A court of equity will never lend its aid where there is an adequate remedy at law. It must, therefore, appear that a court of law is incompetent to reach the property of the defendant in execution, either by reason of its peculiar character, or by inability to discover it; and the return of an execution as to the fact of the existence or non-existence of property within the jurisdiction of the sheriff is the highest evidence, and is conclusive. And hence it is held, that to establish that a court of law is incompetent to reach the property of the defendant, it must be proved that there was a judgment at law, and that an execution was issued thereupon, and that it has been returned by the proper officer unsatisfied, by reason of his inability to find property whereon to levy. *Preston* v. *Colby et al.* 117 Ill. 477; *Dormueil et al.* v. *Ward et al.* 108 id. 216; *Ballentine et al.* v. *Beall,* 3 Scam. 203; *Miller et al.* v. *Davidson,* 3 Gilm. 522; *McDowell* v. *Cochran,* 11 Ill. 31; *Ishmael* v. *Parker,* 13 id. 324; *Newman* v. *Willets,* 52 id. 98; *McConnel* v. *Dickson,* 43 id. 109.

The purpose, then, being to establish a material fact,—namely, that the defendant has or has not property whereon an execution may be levied,—it is manifest, first, that if the plaintiff in execution knows that the defendant in execution has property in a particular county, he should send an execu-

2—129 Ill.

tion to that county; second, the execution should be sent also to any and every county in which there is a legal presumption that the defendant in execution has property. If a person resides and does business in the same county, it is legally presumed that he has property there liable to execution, for ownership is presumed from possession, and insolvency is exceptional, and must always be proved.

Under our statute in relation to negotiable instruments, it is, among other things, provided, that the assignor shall be liable in the event that the assignee shall have used due diligence by the institution and prosecution of a suit against the maker of the instrument. (Rev. Stat. 1874, p. 718.) There, as here, in the section of the statute referred to *supra,* no direction is given as to where the suit shall be prosecuted, or to what county the execution shall be issued. But this court held, in *Bestor* v. *Walker et al.* 4 Gilm. 14, that the suit, under that statute, must be prosecuted, and the execution issued, to the sheriff of the county in which the maker of the instrument resides. In answer to the question, in what county shall the maker be prosecuted to insolvency, it was said: "We feel no hesitancy in replying, the county of the maker's residence, if it be known to the indorsee. It is there, more than anywhere else, that he is presumed to own property."

In *Manchester et al.* v. *McKee, Exr.* 4 Gilm. 515, it was said by CATON, J., in delivering the opinion of the court, discussing the sufficiency of the return to authorize the filing of a creditor's bill: "This is sufficient to entitle the party to file his bill. * * * It shows, *prima facie,* that he had exhausted his legal remedy. It is as much as is required, in the first instance, of a second indorser of a note, under our statute, to show, to enable him to recover of the first indorser; and in this case, as in that, the defendant might probably resist the application successfully by showing that the complainant actually knew of other property out of which he might have made his debt by execution." This, it is true, was not said as indispensable

to the decision of that case, and it is therefore *obiter dictum,* only; but it was the remark of an able and careful judge, and it passed unchallenged at the time by the other members of the court, and it must therefore be regarded as some, though not conclusive, evidence of what the members of this court, as it was then constituted, regarded the law to be upon this subject.

In *Child* v. *Brace et al.* 14 Paige, 309, one of the questions presented was, to what county must the execution be sent to entitle the plaintiff, upon a return of no property found, to file a creditor's bill? And the vice-chancellor said: "The true rule deducible from the decision, I apprehend to be this: that where the judgment is obtained in a court of general jurisdiction, the complainant, *prima facie,* to entitle himself to relief here, must show an execution issued to and duly returned by the sheriff of the county where the defendant is domiciled; or, in case the execution is issued to another county, the complainant must, by distinct averments, and by proof, if necessary, repel the legal presumption of property in the county where the defendant has a fixed residence." The case was appealed to the chancellor, and Walworth, chancellor, in delivering his opinion, said: "The statute is general, that whenever an execution against the property of a defendant shall have been issued on a judgment at law, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery, etc. * * * It must be recollected, however, that this statute is only declaratory of a principle which had before been adopted in this court. It means, therefore, that the plaintiff in the judgment shall have made a *bona fide* attempt to collect his debt by execution against the property of the defendant. If the plaintiff is not aware of the existence of any tangible property of the defendant, it may be sufficient to issue the execution to the county in which the defendant resides, or where he was residing at the time of the commencement of the original suit against him. And if he has, in fact, no property which is subject to execution, perhaps

it may be sufficient to issue the execution to the county where the venue was laid, as was done in this case. But where the judgment is in the Supreme Court, so that the execution may issue to any part of the State, if the defendant has a fixed and known place of residence at the time the execution is issued, and has visible property in the county where he resides, sufficient to satisfy the debt, it will be a good answer to the complainant's bill that he has neglected to issue an execution to that county."

Again, in *Reed* v. *Wheaton*, 7 Paige, 663, a like question was before the same chancellor, and he said: "Where the judgment is in the Supreme Court, so that an execution may be issued to any part of the State, or where the bill is founded upon a decree of the court of chancery, the process of which may also be sent to any county, the complainant who comes into this court for relief, upon the ground that he has exhausted his remedy by execution on the judgment or decree, must show affirmatively, by his bill, that he has issued his execution to the sheriff of the county where the defendant resided at the time such execution was issued, or he must insert some other averment, showing a sufficient and legal excuse for not sending to the county where the defendant resides. If the defendant has removed from the State, or if his residence, upon diligent search and inquiry, can not be found, that may be a sufficient excuse for sending the execution to the county where he resided at the time of the commencement of the original suit against him, or where his last known place of residence was." There was the same ruling in *Merchant's Bank* v. *Griffith*, 10 Paige, 519, and *Wheeler* v. *Heermans et al.* 3 Sandf. Ch. 597. And to like effect, also, is *Smith* v. *Fitch*, Clark's Ch. 266.

It may be, as counsel insist, that there is now a statute in New York affecting the question; but the remarks quoted were predicated upon no statute, and were simply made as announcing the common law doctrine. Our statute provides: "The person in whose favor any judgment may be obtained may have

execution thereon in the usual form, directed to the proper officer of any county in this State, against the lands and tenements, goods and chattels, of the person against whom the same is obtained." Rev. Stat. 1874, chap. 77, sec. 4, p. 622.

The evidence shows that all of the property that Allen owned was at Belvidere, in Boone county, and it was all of that kind that could be seized upon execution or reached by process of garnishment, under section 1, of chapter 62, of the Revised Statutes of 1874, page 550; and this was known to appellants before they had judgment entered against him. Their agents were at his place of business, in Belvidere, on the next two preceding days to that on which judgment was rendered against him. Allen testifies, and no one contradicts him, that Nels Allen, a traveler for appellants, came to Belvidere on the 19th of January, and then proceeds thus: "I told him how much my inventory showed. I figured up some of the bills while he was there. * * * I had a grocery store there,—groceries, flour, crockery—all such things—general store; can not say whether I showed him proportion of merchandise and accounts or not. I showed him what the inventory figured up. He saw what I had. * * * On the 20th I met Mr. Nels Allen and Helmer at Belvidere. They said they had come out to settle up that account. I think we first went to work looking over the accounts, and looking over what I owed, and seeing about how I stood." He further says that the value of his property in the store at Belvidere, at that time, was near $3700 or $3800. There is no pretense that there is any evidence tending to show that H. W. Allen was concealing, or trying to conceal, from appellants, knowledge of his property, or of the amount of indebtedness due him, or the names or residences of his debtors, but directly the reverse is proved. And so it is plain, that an execution in the hands of the sheriff of Boone county could have been levied, without the slightest difficulty, upon every particle of property that he owned that was liable to be seized upon execution, and that the agents of appellants, with Allen's

books open before them, had every facility that was needed to have garnishee process upon all of his debtors, and thereby to reach every dollar of indebtedness that was due to him. There was therefore not the slightest necessity or excuse for resorting to a court of equity to aid in collecting the debt.

But counsel contend, this concerns Allen alone, and that he may waive all objection on account of the failure to send the execution to the proper county, and here has made such waiver. Undoubtedly, he may, by his pleading, waive proof of every allegation in the bill, so far as his rights are concerned, but he can waive nothing as to the rights of others. Executing a power of attorney, however, to confess a judgment in Cook county, manifestly waives nothing except the jurisdiction of that court to render judgment in that case. The refusal to turn out property on execution there, certainly, when he had none there to turn out, can waive nothing beyond his right to object against the officer's return that he had found no property in that county upon which a levy could have been made; and his voluntarily accepting service of notice of the intention to move for the appointment of a receiver, obviously waived nothing but the proper service of that notice; and it seems too plain for argument, that his assignment to the receiver, if pursuant to the order of the court, was involuntary, and therefore concluded him as to no objection that he might, before executing the assignment, have urged against the proceeding. Before Allen had filed answer, and before final decree was entered in the case, the rights of appellees attached to the property. Their liens upon Allen's property had been perfected by the placing of executions in the hands of the sheriff of Boone county, and thereafter it is manifest that no act of Allen could affect rights vested by virtue of those liens. It then became a contest between creditors as to priority of rights, and, necessarily, appellees might interpose any defense which had not been waived by some act of Allen before their liens attached, for after their liens attached, and to the extent of their liens,

they took the place of Allen in regard to the property, unless, indeed, it was previously occupied by appellants.

From what we have hitherto said, it must be clear that Allen might, notwithstanding everything that he had done before appellees' lien attached, have interposed the defense, by his answer to the bill of appellants, that they had not exhausted their remedy at law before filing the bill, and he having had that right, it passed to appellees the moment their lien to the property attached.

The judgment is affirmed.

*Judgment affirmed.*