Hughes v. Link Belt Machinery Co.

---

### George R. H. Hughes v. Link Belt Machinery Co.

1. CREDITOR'S BILL—*Purpose of Requiring the Issue and Return of an Execution.*—The purpose of requiring the issue and return of an execution as a foundation for a creditor's bill, is to make it appear that a court of law is incompetent to reach the property of the defendant, and when such execution has been returned unsatisfied for some reason other than the officer's inability to find property upon which to levy, such return will be insufficient as a foundation of a creditor's bill.

2. EQUITY—*Does Not Lend its Aid Where There is a Remedy at Law.* —A court of equity will not lend its aid where there is an adequate remedy at law, and to establish the incompetency of a court of law it must be proved not only that there was a judgment at law and an execution, but that the execution has been returned by the proper officer, unsatisfied, by reason of his inability to find property upon which to make a levy.

3. RECEIVER—*Appointment of, When Improperly Procured.*—The appointment of a receiver by the collusion of a debtor, so that his business may be continued without interference on the part of his creditors, is improper, and a fraud upon the rights of such creditors.

4. SAME—*Liability for Costs and Expenses in Case of Illegal Appointment.*—Where the appointment of a receiver is illegal, and is procured by the collusion of a debtor for the purpose of enabling him to

continue his business without interference on the part of his creditors, the party procuring such appointment will be liable for the costs and expenses of the receivership.

**Creditor's Bill.**—Appeal from the Superior Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded with directions. Opinion filed June 4, 1901.

**Statement.**—March 13, 1893, appellant executed and delivered to the Standard Eggette Coal Company, a corporation, a lease of certain property known as Hughes' Dock, containing about five and a half acres bordering on the Chicago river, for a term beginning at the date of such lease and running to April 30, 1895. The rental agreed upon was $10,225, payable by installments. The lease provides that the whole amount of the rent and of each installment thereof should be a valid and first lien upon all buildings and improvements then or thereafter placed upon said property during the term. The lease contained also an option entitling the lessee to buy the property within eighteen months for $103,000.

The lessee took possession, and December 30, 1893, being indebted to appellee, gave the latter a judgment note for $615.05 payable on demand. Three days thereafter appellee caused judgment to be entered by confession upon said note, upon which execution at once issued, demand was made, and the execution immediately returned no part satisfied. The same day appellee filed a bill in the nature of a creditor's bill averring that it was not able to collect its said judgment; that said Eggette Company had erected its plant, at large expense, upon said leased land for manufacturing artificial coal; that it had reached a point where appellee was informed and believed it was about successfully and profitably to manufacture such coal; that it was for appellee's interest and that of the Eggette Company and its other creditors that the business should be continued under order of court by a receiver, and praying that such receiver should be appointed " to continue the business sufficiently to secure to said creditors the real and true value

of said lease and patents." A receiver was accordingly appointed, and with the consent of the Eggette Company he was directed to continue the business of manufacturing artificial coal, which he did, it is said, for two or three months. The receiver so appointed was the treasurer of appellee and also of the Eggette Company.

A month's rent was paid appellant by the receiver, but as other payments became due and were not met, appellant thereupon filed his application therefor in the pending cause. A statement of the proceedings with reference thereto may be found in Link Belt Machinery Company v. Hughes, 174 Ill. 155, and need not be here repeated. In that case the judgment of the Superior Court of Cook County and of the Appellate Court was sustained, holding that Hughes, the present appellant, was entitled under the lease to a valid and first lien for unpaid rent upon the property of the lessee and the proceeds arising from the sale thereof by the receiver. The amount in the receiver's hands arising from the sale of the Eggette Company's property upon which the rent was thus decided to be a first lien, was $2,138, and this sum was accordingly paid to appellant, and the receiver discharged. The amount due appellant was $3,774.38, leaving a balance of $1,636.38 still due after such payment.

Appellant thereupon filed the petition involved in this appeal, in which, after reciting the foregoing facts, it is charged in substance that the appointment of the receiver and the orders directing him to take possession of the leased premises were wrongfully and fraudulently obtained by appellee for its own emolument; that the original creditor's bill was filed, not for the purpose of collecting the judgment for $615.05 upon which it purported to be based, and which could readily have been collected by levy of the execution, but because appellee, owning $7,000 of the capital stock of the Eggette Company, " desired to experiment with a patented process of manufacturing artificial coal, believing there were millions in it, and to that end invoked the aid of the Superior Court, with the pleasing hope of conduct-

ing speculation on petitioner's premises, and virtually at his expense;" that the filing of said bill and the proceedings thereunder were a sham and pretense and a cover for speculation' by appellee; that the receiver was appointed upon the faith of averments in the original bill which were untrue, and that appellant was thereby deprived of the use of his property without due compensation and suffered loss and damage; that the whole proceeding was in pursuance of a fraudulent and wrongful· conspiracy between appellee and said Eggette Company for the purpose of defrauding appellant and other creditors, and depriving appellant of the beneficial enjoyment of his said premises. The petition prays for an answer, the dismissal of the bill, and that appellee be ordered to pay petitioner $1,636.38, the balance of rent due him, with interest, and for other relief.

Appellee answers, denying the fraud. Proofs were taken, and upon hearing, appellant's petition was dismissed for want of equity. From this order of dismissal and denial of relief the present appeal comes.

H. S. & F. S. OSBORNE and R. F. PETTIBONE, attorneys for appellant.

EDWARD F. GORTON and GEORGE W. BROWN, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It was decided upon the former appeal that the lease in question expressly gave the present appellant "a lien upon all the property of the lessee for rent which should remain due and unpaid," and that the receiver took the property subject to the same terms and conditions upon which it was held by his insolvent, and became bound to pay the rent named in the lease. Link Belt Machinery Co. v. Hughes, 174 Ill. 155 (162). It is not denied that the receiver was appointed and directed to carry on the business of manufacturing artificial coal at the instance and request of appellee and upon the representations made in the bill of complaint, the Eggette Company by its officers consenting

thereto. Such was evidently the fact. It is now contended by appellant that no reasonable and proper ground for the appointment of a receiver existed, that no proper case for such appointment was presented, and that therefore appellee has made itself liable for the balance of the rental due appellant for the receiver's occupancy of the latter's premises.

The original bill stated that appellee had been unable to collect a judgment of $615.05 against the Eggette Company. We think it sufficiently appears that it was not the intention and that no real effort was made to collect by execution. The judgment by confession was entered, the execution placed in the sheriff's hands, demand made, the writ returned unsatisfied, and the bill in question filed, all upon one and the same day. The demand was made upon Dana, treasurer of the Eggette Company, and also of the Link Belt Machinery Company, appellee herein, and he was at once appointed receiver on the application of the latter and with the consent of the former company. As treasurer of the Eggette Company he was familiar with its affairs and should have known and did know, as he admits, that there was ample personal property available with which to satisfy the execution. It is now said in behalf of appellee that if, as was held upon the former appeal (Link Belt Machinery Company v. Hughes, *supra*), appellant, as landlord, had a lien upon all this property, a levy would have been useless. But it can scarcely be seriously contended that such inchoate lien for indebtedness not due and which might never become due if the rent continued to be paid—a lien which there had then been no necessity and no effort to assert, could have protected this property from appellee's execution. The purpose of requiring the issue and return of an execution as a foundation for a creditor's bill is, that it may be made to appear that a court of law is incompetent to reach the property of the defendant in execution. A court of equity will not lend its aid where there is an adequate remedy at law, and to establish the incompetency of a court of law it must be proved, not only that there was

a judgment at law and an execution, but that the latter " has been returned by the proper officer unsatisfied, by reason of his inability to find property whereon to levy." Durand & Co. v. Gray et al., 129 Ill. 9 (17); Stirlen v. Jewett, 165 Ill. 410 (415). The evidence is apparently conclusive that the execution in question was returned unsatisfied for some reason other than inability to find property upon which to levy.

Nor does the evidence sustain the further statement that the Eggette Company had wholly ceased doing business. It was doubtless embarrassed, but had not yet given up the effort to successfully manufacture its product. Dana testifies that said company was running machinery, but "not doing much business—experimenting."

The truth seems to be that other creditors were threatening to attach the property, as Dana testifies, and that appellee, having an interest of some $7,000 or $8,000 as a stockholder acquired for machinery furnished the Eggette Company, became alarmed. It was then decided that it was best, as the witness states, to " place the entire property in the hands of a receiver to protect the creditors."

In reply to the charge of fraud and collusion the same witness states that the bill was brought for the benefit of all the creditors. This is doubtless true to the extent that if the experiments had succeeded, and under the receiver's management the Eggette Company had become prosperous and able to thereafter conduct a profitable business, it might have been able to pay its debts and make its stock valuable. Nevertheless the immediate purpose of the bill was to hinder and delay the other creditors. It is said by appellee's counsel that the bill sets up numerous grounds for the appointment of the receiver, " among which was the fact that the large plant had only just been completed, and that all parties believed if the creditors could be held off a short time and the plant put in operation, the receiver could pay them all in full; and as evidence of this belief, appellant advanced the receiver $1,558.13 for operating expenses, which he never got back." It is thus con-

Hughes v. Link Belt Machinery Co.

ceded that the purpose of the bill was to maintain the plant in operation in spite of appellant or other creditors. That there was collusion, in the sense that the course pursued was agreed upon beforehand between appellee and the Eggette Company, is apparent from the admitted facts and from the course of procedure adopted. It is urged in behalf of appellee that this agreement is no evidence of fraud; that a failing debtor may consent to the entry of a judgment against him with entire propriety. This is true, doubtless, but the alleged collusion here was not merely as to the entry of the judgment by confession, but its entry as a part of a general scheme by which the judgment was to be used as a pretext to obtain possession of the plant of the Eggette Company in defiance of other creditors, obtain the use, *inter alia*, of the premises of appellant, and prevent him from exercising his rights under the lease and enforcing his lien for rent as it became due. It is alleged in appellee's answer to the petition under consideration, that appellant acquiesced in the appointment of the receiver. The evidence fails, however, to show any such acquiescence equivalent to a waiver of any of appellant's rights. The latter states that he was never consulted and never assented to or ratified the proceedings in controversy, and we think the record bears out his statement. We are compelled to conclude that the purpose of the entry of judgment, return of execution and the creditor's bill, so called, was to place the property of the Eggette Company in the hands of a receiver and under the protection of the court in order to prevent creditors, including appellant, from reaching it by the usual legal means. There was no actual controversy between appellee and the Eggette Company, and while there may have been, as appellee asserts, no actual intention to defraud any one, nevertheless the intention was to delay creditors, and the result has been that appellant has been deprived of possession of his property for a considerable period of time, has lost a considerable portion of his rent, was prevented from terminating the lease and re-renting, and has been obliged to contest through three courts

against the opposition of appellee, in order to maintain his claim to the lien to which, by the terms of his original contract, he was entitled. The procedure by which this was accomplished was improperly instituted without warrant. Stirlen v. Jewett, 165 Ill. 410.

It is now contended by appellant that under these conditions appellee, as the party instituting the improper procedure and procuring the appointment of the receiver, must stand all the costs, including the expenses of the receivership, and must pay appellant the balance due for unpaid rent.

It appearing that the appointment of the receiver was improperly procured, his costs and disbursements were chargeable to appellee, who, as complainant in the suit, procured the receiver's appointment. McAnrow v. Martin, 183 Ill. 467 (473); Highley v. Deane, 168 Ill. 266 (272). In the first of the last cited cases it is held that the receiver therein, having been improperly appointed, was entitled to receive from the complainant, at whose instance the appointment was made, a just compensation for his services and a reasonable fee for his solicitor; and it is said that "the court, upon the final disposition of the cause, should have ordered the complainant in the suit to pay the receiver's charges and disbursements as a part of the costs in the case." Applying that rule to the case at bar, it would seem to follow that, had the receiver under proper order paid the balance of the rent due appellant out of funds belonging to an innocent party defendant, which, owing to the subsequently declared impropriety of his appointment the receiver had no right to apply for such purpose and might therefore have to make good to the proper owner, said receiver would have been entitled to an order compelling appellee to repay such disbursement. In Highley v. Deane, *supra*, it is said:

"The law is not so powerless that a court of equity may be invoked to sustain an unjust claim   *   *   *   and as to the receiver's charges, must let the person who rendered necessary the appointment go free of costs and have the costs paid out of the proceeds of an innocent party's prop-

erty.    Such a rule would imply that an innocent party, after vindicating his right to his property, might have it taken to pay an expense resulting from the wrongful act of the defeated party.    Where the receivership is procured under the assertion of an unjust and wrongful claim, as finally found by the court, and the receiver is authorized to take possession of the property of another on such wrongful assertion, the court can protect the injured party by returning the property of which he was divested without its being diminished to pay receiver's charges."

We regard the principle above stated applicable to the facts before us.    While appellant was not a party defendant to the so-called creditor's bill now in question, his property was taken possession of by the receiver and kept out of his control during the receiver's occupancy, as fully as that of the Eggette Company, the actual defendant at which the bill of complaint was apparently directed.    It is now claimed in behalf of appellee that although responsible for wrongfully depriving appellant of the privilege of exercising his legal rights under the lease, distraining for his rent, terminating the tenancy for non-payment, and perhaps re-letting to responsible tenants—although responsible for the continued possession by the receiver, and its prolongation during the lengthy litigation which appellee carried on to deprive appellant of his lien upon property wrongfully in the receiver's hands with the knowledge that the receiver had no funds with which to pay the rent continuing to accrue, yet that appellee is entitled to go free of such cost of the receivership and that the loss must be borne by appellant, an innocent party.    This rent for which the receiver had become responsible was a part of the costs of the receivership as fully as any other expense thereby occasioned.    We know of no reason for absolving the appellee from liability therefor, more than for any other of the receiver's charges and disbursements.

It is urged by appellee's counsel that appellant had opportunity to get possession of the land and refused; that the receiver " made several propositions to get off the property."    These were, however, conditioned upon appellant's consent to the removal of the property upon which he had

a lien under the lease, and involved a waiver of the lien. Such an offer can not avail appellee. The condition involved a surrender of a rightful claim, and appellant was under no obligation to make the sacrifice demanded in order to get possession of his land wrongfully withheld.

Appellee insists that appellant's claim is barred by reason of laches, and because the relief sought was prayed for in the former petition, under which it was adjudged that appellant had a valid first lien upon the proceeds of property in the receiver's hands. It is also stated that the record is manifestly incomplete and "omits testimony, orders and pleadings." No such omissions are pointed out however, and it must suffice to say that we do not consider these objections well taken.

The judgment must be reversed and the cause will be remanded to the Superior Court with directions to enter judgment in favor of appellant against appellee for $1,636.38, with interest from June 4, 1895, but not to dismiss the bill.

Reversed and remanded with directions.