# John F. Coffman

*v.*

# George Scoville *et al.*

1. Covenant — *against incumbrances — its effect — and herein, whether a transaction is one or several.* A vendor of land who conveys by deed containing a covenant against incumbrances, and takes the notes of the purchaser, secured by trust deed on the property, for the unpaid purchase money, is bound to protect the purchaser against any incumbrances that were on the land when he conveyed, before he can properly demand payment of the notes given for the purchase money.

2. It is the right of a purchaser of property under a deed with covenants against incumbrances' to have all incumbrances that may be on it removed, before his vendor can sell it under a deed of trust executed by such purchaser to secure the payment of the purchase money.

3. Where a party owning one undivided half of property, and having a con-tract with the owner for the purchase of the other half, enters into a contract with a third person for the sale to him of the half then owned, and of the other half when acquired, and afterwards executes separate deeds, each containing covenants against incumbrances, for the two halves, and takes separate notes and deeds of trust for the purchase money, the transaction will be considered as one, and, before a sale can be held under either deed of trust, all incumbrances must be removed from the whole tract.

4. Sale — *of land under trust deeds.* Where the title to a tract of land is vested in a trustee by virtue of two deeds of trust, executed by the same party and for the benefit of the same party, each deed being for an undivided half of the land, the whole land should be sold together under both deeds, and not one half at one time, and the other half at another.

5. Same — *of land under trust deed will be set aside when made by party whose covenant against incumbrances has not been kept.* Where the vendor of land covenants that it is free of incumbrance, has it sold under a deed of trust given to him for the purchase money, and becomes the purchaser at the ·sale whilst there is an incumbrance by way of mortgage on it which by his covenant he was bound to remove, the sale will be set aside, and all further proceedings to collect the purchase money stayed until the prior incumbrance is removed and the property placed in such condition that the purchaser will get the title clear of any incumbrance.

Appeal from the Circuit Court of Cook County.

Messrs. Harding, McCoy & Pratt, for the appellant. ·

Messrs. Scoville & Bayley, for the appellee George Scoville.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In December, 1872, George Scoville was the owner of the undivided half of certain lands in Cook county. The title to the other undivided half of these same lands was in one David C. Shipherd. Shipherd's title was subject to an incumbrance of $9,000 by a mortgage of record, before that time made by Shipherd to one Adams. It was also subject to another incumbrance, amounting to $500, by reason of a trust deed to Pearson. A suit was pending against Adams, brought by Shipherd and one Vogle, the object of which seems to have been to set aside this $9,000 mortgage and declare it void.

In that condition of affairs George Scoville and Shipherd, on December 18, 1872, entered into a written contract with each other, by which Shipherd agreed to sell and convey to Scoville, by warranty deed, the undivided half of the lands in question (free from all incumbrance — except the $500 incumbrance to Pearson) for the price of $5,500, to be paid on receipt of the deed, with abstract of title showing good title in Shipherd clear of all incumbrance (except the $500 to Pearson, which $500 Scoville was to adjust, and be credited for that amount as part of the price), and Scoville stipulated that he would do what he could to compromise or settle the suit against Adams, so as to get said premises released from the $9,000 lien without charge to Shipherd or Vogle.

It was agreed that this contract should be valid for two months, and that Scoville should comply with his part on two days' notice from Shipherd of his readiness to give a clear title.

This contract was acknowledged and filed for record on the day on which it was made.

On the next day George Scoville and Joseph R. Bickerdike appeared before a notary public of Cook county and acknowledged the execution of a written contract made between them, dated on December 18, 1872, by which Scoville

302          Coffman v. Scoville et al.          [Sept. T.

Opinion of the Court.

agreed to sell to Bickerdike, and convey by warranty deed
within thirty days, one undivided half of the lands in ques-
tion for the price of $11,250, to be paid, one-fourth on
execution of the deed (less $500 paid at the making of this
contract), and the remaining three-fourths in three equal
annual payments, with interest at eight per cent, for which
Bickerdike should execute his notes to Scoville, secured by
deed of trust on the undivided half of the lands so pur-
chased. The deed from Scoville and the notes and deed of
trust from Bickerdike it was provided should be dated on
December 18, 1872.

It was further agreed in said writing that Scoville would
use his best efforts to obtain title to the other undivided
half of the premises at an early day, and, if the title should
be obtained within sixty days, Scoville undertook to sell
the other undivided half of the premises to Bickerdike for
the same price and upon the same terms and conditions as
those provided as to the undivided half then owned by
Scoville.

On December 31, 1872, an omitted provision was in-
dorsed on the contract by Scoville, requiring him to furnish
abstracts of title showing a good title under the within con-
tract before Bickerdike should be obliged to comply on his
part. At the hearing of this case, Bickerdike, who was
called as a witness by Scoville, testified that in buying from
Scoville he made it a point that Scoville should furnish the
other half of the land, as he did not wish to buy one undi-
vided half of the land unless he could get it all.

On January 7th, Shipherd executed to Scoville a general
warranty deed for the undivided half of the premises.

On January 31st, Scoville, at the request of Bickerdike,
executed a general warranty deed to Coffman (instead of
to Bickerdike) of the first named undivided half of the
property.

By the original agreement, at the deeding of this undi-
vided half of the property to Bickerdike, Bickerdike was
to pay in cash $2,312.50, and to execute his three promis-

sory notes, each for $2,812.50, dated upon December 18, 1872, and payable, one in one year, one in two years, and one in three years from date, and, to secure the same, was to execute a trust deed upon the undivided half of the property so conveyed.

Instead of this, at the request of Bickerdike the property was conveyed, as above stated, to Coffman, and, instead of the cash payment of $2,312.50, Coffman and Bickerdike executed to George Scoville their promissory note at ninety days for $2,450 (being an addition of $137.50 for the delay of ninety days), and Coffman executed his three promissory notes payable at one, two, and three years from December 18, 1872, each for the sum of $2,812.50, and to secure these notes Coffman executed to James W. Scoville as trustee a trust deed upon the property conveyed to him, with the ordinary power of sale. He also gave separate notes for the interest.

At the time of this transaction the existence of the apparent incumbrance of $9,000 and of the $500 mortgage was known to all the parties, but Scoville assured the parties that he would have it removed. Bickerdike and Coffman testify he promised to do so in a few days; but this Scoville denies.

At the same time an indorsement was made in writing upon the original contract between Bickerdike and George Scoville, stating that the agreement therein contained, as to the first undivided half of the premises, had been fulfilled by the execution of the papers relating thereto — the deed, trust deed, and notes — "the same being executed, at Bickerdike's request, to and by John Coffman instead of Joseph R. Bickerdike."

About April 22, 1873, the parties met again at Mr. Scoville's office, and thereupon Scoville conveyed the second undivided half of the property in question to Coffman by a general warranty deed, dated April 12, 1873. Bickerdike paid to Scoville $1,000, as a part of the cash payment, and for the balance thereof a note was drawn for $1,812.50,

304      COFFMAN *v.* SCOVILLE *et al.*     [Sept. T.

Opinion of the Court.

payable to George Scoville, June 28, 1873, with interest at ten per cent, which was signed by Bickerdike and Coffman, and Coffman executed his three promissory notes, payable at one, two, and three years' date with interest, upon April 12, 1873, each for the sum of $2,812.50, being the balance of the purchase money; and to secure these notes Coffman executed to James W. Scoville another trust deed of the same character with the trust deed securing the purchase money of the first undivided half.

At the same time, or soon after, Scoville gave to Coffman a receipt dated April 23, 1873, reciting the giving of the above mentioned note of $1,812.50, and saying, "said note shall not be required to be paid at maturity unless the lien of a certain mortgage of $9,000 on said premises, made by D. C. Shipherd to Thomas K. Adams, shall have been removed and the premises cleared therefrom, nor shall said note be paid by said makers until said lien shall have been released."

George Scoville, in his testimony, says that at the time he first contracted with Coffman he had a contract with Shipherd for the second half of this property, and that it was known at that time that there were two incumbrances by mortgage on the Shipherd half of the property — one of $500, and one of $9,000; that a bill at that time had been filed to set aside the mortgage, and the suit was then pending. He says that at the time of the transaction in April, 1873, he told Coffman the condition of the contract between Shipherd and himself, and that Shipherd was to clear up those incumbrances and give Scoville a clear title; that he then agreed to give Coffman a warranty deed. George Scoville, in his answer to the bill, says that at the time he obtained his deed from Shipherd that half of the property was incumbered for $9,000 and $500, which incumbrances Shipherd was to have removed; and he states that Bickerdike and Coffman were fully informed of these incumbrances, and that in April, 1873, when he conveyed this last undivided half of the property to complainant by

warranty deed, he agreed to remove said incumbrances as soon as he could by litigation, and that complainant accepted the same in that manner.   He further says, in his answer, that at that time a suit to foreclose the $9,000 incumbrance was also pending, and was afterwards prosecuted to a final decree for the whole sum of $9,000, and the interest, and that he afterwards made a contract to purchase the decree at the price of $5,750, and paid on account of that purchase $1,000 in cash, before the sale of the property under his trust deeds, and has since paid $1,000 more, so that at the time of the filing of the answer there remained unpaid upon his contract for the purchase of said decree $3,750 and interest, for which he had given his notes.

During the summer of 1873, Coffman paid to Scoville, with interest, the note for $1,812.50, and the note for $2,450, making in all paid upon said contracts the sum of $5,762.50, besides interest.   In October, 1874, two of the notes given by Coffman for the purchase money, and secured by the trust deeds, were past due, one having fallen due December 18, 1873, and the other April 12, 1874.   George Scoville thereupon caused the land to be advertised for sale under both trust deeds, and on November 10, 1874, the same was sold, and George Scoville became the purchaser. One undivided half was sold under one trust deed, and the other undivided half under the other trust deed, and each undivided half was struck off to George Scoville at $2,300, in all $4,600, and the property was conveyed by the trustee to George Scoville.   At this time the decree foreclosing the $9,000 mortgage for the full amount of that sum with interest stood upon the record in full force, and, so far as the public could know, this decree was under the control of Adams, and was an incumbrance to its whole amount upon one undivided half of this land, and in point of fact, according to the testimony of George Scoville, it remained still a lien in favor of the creditor Adams as against Shipherd for its full amount, and as against Scoville for the amount of $4,500.

20 — 86TH ILL.

The proof uncontradicted · seems to show that Coffman had really no interest in any of these transactions.

He incurred the liabilities already mentioned, merely for ·the accommodation of his friend Bickerdike, and, as between him and Bickerdike, in equity he occupies merely the posi- ·tion of a security for Bickerdike.

After the sale of this mortgaged property, as above stated, George Scoville brought suit in a court of law against Coffman, to recover ·the balance of the purchase money mentioned in the several notes given for these prem- ises.    This is a bill filed by Coffman asking that the trustee sales of this land to George Scoville may be set aside ; that the original contracts of purchase between him and Sco- ville, and subsequent deeds, ·deeds of trust, and notes, may be set aside and canceled, and that Scoville shall be en- joined from proceeding to collect the notes, and for general relief.

· The bill contains many charges of fraud which are not sustained by proof and need not be further noticed.    The facts above stated are most of them admitted in the answer and testimony of George Scoville.    The others are proven specifically by other witnesses, and not contradicted by Scoville in his testimony.

It was undoubtedly the duty of Scoville, before he could properly demand payment of any of the notes given for the purchase money, to.protect the purchaser from the in- cumbrance upon this land against which he had warranted. If he proceeded simply to collect the purchase money at law, a court of equity, upon the facts, would have author- ized the purchaser to withhold a sum sufficient to discharge this incumbrance.    It was surely unjust to the purchaser that the property embraced in the trust deeds should be ·sold at a sacrifice by reason of this incumbrance.    It was his right in equity that the property when sold under the trust deeds should be free from every apparent incumbrance, that it might bring its full value upon the sale.    The pur- chaser is required to pay the full sum of $22,500 for this

land. His contract to pay that sum was as the price of a clear and unincumbered title to the land. That was the price of a clear title to the land. By the trust deeds the vendor had a right to have the property sold for the satisfaction of so much of the purchase money as it would bring, but, before that property could be thus sold, common justice demanded that it should be put in the condition as to its title which the vendor had agreed that it should occupy, and had warranted that it did occupy. It is said that the land has depreciated in value between the time of the original purchase and the time of the sale under the trust deeds, and that this sacrifice must be borne by the purchaser of the land. This is true. The debtor is bound, under such circumstances, to suffer loss to the amount of the difference between the value of the property when bought and the value of the property when sold under the trust deeds, but by this mode of proceeding the debtor is made to suffer loss to the amount of the difference between the agreed price of the whole property with a clear title, and the value, not of a clear title to the land, but the value of a title to the land subject to an incumbrance of $9,000.

While the proof does not sustain that part of the bill in which it is sought to set aside the original contracts of purchase, and cancel the notes given for the purchase money, still the facts shown upon this record make it plain that the sale under the trust deeds, made under the circumstances stated, has done gross injustice to Coffman. He is entitled to have that sale set aside, and the deeds made to Scoville by the trustee canceled, and the further sale of the property under these trust deeds restrained until the title conveyed by George Scoville to Coffman shall be stripped of all apparent incumbrance.

It is insisted by George Scoville that the purchase of each undivided half of the property should be treated as a separate transaction having no connection with the purchase of the other undivided half. We can not concur in this view. The original contract out of which all of these trans-

actions grew, made between Bickerdike and George Scoville, dated December 18, 1872, contemplated the purchase by Bickerdike of the entire tract of land. Scoville at that time had a clear title to one-half of the property, and a contract with Shipherd for a clear title to the other half. The scope of the contract was for the purchase of the whole property; but the transfer of the title to one-half was provided to be made immediately, whereas the other was to await the procurement of a conveyance from Shipherd. Bickerdike, in his testimony, swears that it was a material point with him, under the original purchase, that he was to get the whole land, and that he would not have purchased the undivided half except with the expectation that he would acquire title to the entire tract. The title to the entire tract being vested in the trustee by the two trust deeds, the sale should have been made, not of one undivided half at one time and another undivided half at another, but the title to the entire property should have been sold, as it is plain it would have commanded a better price in that way. Scoville can not be justified in profiting by his own default. The plain presumption is that the property would have commanded a better price had the title been clear. It is by Scoville's default that the incumbrance still rested upon the land. He had covenanted that it was free from incumbrance. He can not be allowed, under such surroundings, to force the property to sale — much less to become a purchaser himself of property thus exposed to sacrifice.

The decree is reversed, and the cause remanded for proceedings in accordance with this opinion.

*Decree reversed.*