## Minnie Metz v. McAvoy Brewing Company et al.

1. IDEM SONANS—*Meetz and Metz.*—The names Meetz and Metz are so near alike in spelling and pronunciation that, under the authorities in this State and elsewhere, they are *idem sonans.*

2. PRACTICE—*Correction of Error in Spelling.*—Where there is any doubt because of the different spelling of a name it is within the power of a court of equity to correct such doubt upon notice to the parties in interest and a showing of the facts.

3. EXECUTIONS—*Right of the Defendant in, to Turn Out Real Estate.*— A defendant in an execution has the right to turn out real estate in satisfaction, before his personal property can be taken.

4. EQUITY JURISDICTION—*Where Remedies at Law Must Be First Exhausted.*—Equity will not enforce a legal demand until a creditor has exhausted his remedy at law.

5. SAME—*On Cross-bills, When Without Jurisdiction on the Original Bill.*—Where a court of equity is without jurisdiction on an original bill, it is also without jurisdiction on a cross-bill filed in the same suit.

6. COVENANT—*Right of, to Nominal Damages.*—A covenantee has no right of action against a covenantor on his covenant of warranty until he has suffered a loss, except for nominal damages.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County: the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the March term, 1901. Reversed, with directions. Opinion filed December 23, 1901.

**Statement by the Court.**—The McAvoy Brewing Company, on November 6, 1895, filed its creditor's bill against Lorenz Metz, the appellant, Minnie Metz, the appellee Newberry, and others, upon a judgment in its favor against said Lorenz Metz and one Sierk, by which it sought a discovery pertaining to divers matters alleged in the bill, asked authority to proceed upon alias execution upon its judgment against certain real estate described in the bill, which it is alleged the title to was, at the time of the rendition of the judgment upon which the bill is based, in said Lorenz Metz, and was subsequently conveyed so that the title became vested in the appellant, and was by her sold and conveyed to the appellee Newberry before the filing of the bill. The bill prays other relief not necessary to be stated, and for general relief.

After other proceedings, the appellant answered, by which, among other things, she claimed that the judgment in question was void, that the debt on which it was based had been paid, and that the brewing company had not exhausted its remedy at law.

The appellee Newberry filed his answer and cross-bill, setting up the conveyance of the property to him; that he had no notice of the brewing company's judgment; that appellant was insolvent and that she held his three notes of $3,437.50 each, given for a balance of the purchase money of the real estate; that the property belonged to Lorenz Metz, and not to appellant; and praying that he might be permitted to withhold the entire sum of money evidenced by the notes, and that proper orders be made protecting him.

Issues were made upon the bill and cross-bill, and the cause referred to a master to take proof and report his conclusions thereon. The master took evidence and reported his conclusions thereon, substantially as hereinafter stated in the findings of the decree. Objections to the report were overruled by the master, and like exceptions before the court were overruled by the chancellor, and the report was in all things approved and confirmed.

The decree in substance finds as follows: Finds that on the 21st day of July, A. D. 1893, John Sierk and Lorenz Metz executed a judgment note to the brewing company, payable on or before July 21, 1895, for $2,641.82, with interest payable quarterly at six per cent per annum after date, until maturity, and seven per cent per annum after maturity until paid, and that said note contained a power of attorney authorizing confession of judgment thereon at any time thereafter, with thirty dollars attorney's fees, and waiving and releasing all errors which might intervene in any such proceedings; that said note was given by said Sierk and Metz in payment for a saloon purchased by Sierk from said brewing company; that at the time the note was executed by Sierk and Metz, Metz stated to an agent of the brewing company that he was the owner of a manufactory of cigar boxes and of the property upon which the

same was located, and that the said brewing company took said note, relying upon the ownership by Metz of said property; that on the 17th day of January, 1894, a judgment by confession was rendered upon said note for $2,747.97 and costs; that the record of said judgment shows the judgment against "Lorenz Meetz;" that the misspelling of the word "Metz" was by reason of a clerical error, which appeared upon the *narr.* and *cognovit* upon which said judgment was entered; that the signature of Lorenz Metz upon the said note was written in such a manner as to lead a person not familiar with said signature to regard it as written " Lorenz Meetz." That on the 25th day of January, 1894, an execution was duly issued upon said judgment and placed in the hands of the sheriff, upon which execution is indorsed as follows:

"The within named defendants and no property of the within name defendants found in my county on which to levy this writ. I therefore return the same, no property found and no part satisfied this 24th day of April, 1894. James H. Gilbert, Sheriff, by J. H. Wetherfield, Deputy."

That the amount of said judgment, together with the costs thereof, is still unpaid and due and owing from the said John Sierk and the said Lorenz Metz to the brewing company, together with interest thereon from the date of the rendition of said judgment, except that there is a credit of $450, as hereinafter mentioned, upon the amount of said judgment, by reason whereof there is now due and owing to the brewing company from the said Lorenz Metz the sum of $2,297.97, with interest thereon at five per cent per annum from the 17th day of January, 1894, together with the cost of said suit. That the said note was secured by a chattel mortgage executed by the said John Sierk on the 21st day of July, 1893, by which was conveyed unto the brewing company certain goods and chattels in the saloon on the premises 54 Dearborn street, Chicago, and was duly acknowledged before a justice of the peace. That default was made in the payment of the note secured by the chattel mortgage, and it was foreclosed by a constable, in accordance with the terms of said mortgage, and that the

goods and chattels named in the mortgage were, on the 18th day of January, 1894, sold to Thomas J. Finucane for $200, he being the highest bidder, and became the property of the brewing company; and that afterward said goods and chattels were sold by the brewing company for $450, which was tendered to Metz and was accepted by him as a credit, upon the trial of this cause, and is not included in the amount found due and owing under the said judgment. That John Sierk was present at the said foreclosure sale, and that the defendant Lorenz Metz was notified of the said sale before the sale took place.    That the fixtures that were foreclosed and sold under and by virtue of said chattel mortgage were but a part consideration for the amount paid by John Sierk for the place, as evidenced by his note, and that the purchase price of said saloon included the good-will.    That upon the 17th day of January, 1894, said Lorenz Metz was the owner in fee of the property described in the bill.    That upon the 20th day of January, 1894, three days after the rendition of the said judgment, Lorenz Metz, by his deed dated the 20th day of January, 1894, transferred his said property to Frank Rayner, which deed was afterward duly recorded, and that said Lorenz Metz had actual notice of the entry of said judgment prior to the transfer and conveyance thereof by him to Rayner.    That Rayner, on the 20th day of February, 1894, transferred the property by quit-claim deed, to Minnie Metz, which deed was duly recorded, and that at the time the said transfers were made, Rayner was upon intimate terms with the Metz family, and some time after this transfer married a daughter of the said Lorenz Metz and Minnie Metz; and that Rayner gave no consideration for the transfer of the property to him by Lorenz Metz, and received none from Minnie Metz when he, Rayner, transferred the property to her; that on the 31st day of May, 1895, the defendants, Minnie Metz and Lorenz Metz, by their warranty deed, transferred the said property to Walter C. Newberry, which deed was duly recorded in the recorder's office of Cook county, Illinois; that Newberry paid for the said property one-fourth in

cash and the balance by notes secured by a trust deed upon the property given to Minnie Metz; that said notes remained in the hands of Minnie Metz; that Newberry, as defendant in this suit, was restrained by an order of the court entered herein, from paying the notes or any part thereof, and the defendants, Lorenz Metz and Minnie Metz, were restrained from receiving any payment on said notes; and that on the 16th day of December, 1895, an order was entered by the Honorable Murray F. Tuley, one of the judges of this court, releasing one principal note and coupon last due held by Minnie Metz, the preliminary injunction entered herein to stand as to the remaining notes and in the bills and proceedings mentioned until the hearing of the motion to dissolve the said injunction; and thereafter, to wit, on the 2d day of November, 1896, an order was entered in this cause by the Honorable Murray F. Tuley, one of the judges of this court, by which the injunction order heretofore entered was modified, so as to release from the operation of the injunction the first of the three notes made by the said Newberry, and which was then due and unpaid, and Newberry was thereby authorized to pay, and the said Minnie Metz to receive the sum of money then due upon the first note executed by Newberry; and afterward, to wit, on the 6th day of December, 1898, it was ordered by the Honorable Edward F. Dunne, one of the judges of this court, that the remaining note executed by Newberry and payable to the order of Minnie Metz, might be paid by said Newberry to the Hibernian Banking Association, to be held by it in lieu of any claim or lien that any of the parties herein may have against said note or the land held in trust for the security of said note; the injunction granted herein as to said note was by the said order dissolved upon the payment of the said note as in said order provided, but the said injunction was to stand as to the moneys held by said banking association the same as if the bank had held the said note, and by the said order the rights of the several parties herein were reserved for further adjudication. That on the 8th day of December, 1898, the sum of $4,155.98

was deposited to the account of Graham H. Harris, trustee, in said bank, and said account, together with interest thereon from the day last mentioned, remains in the bank under and by virtue of said injunction order and the orders subsequent thereto entered in this court. That Lorenz and Minnie Metz were married at Crown Point, Indiana, in 1871, and came to Chicago, where Metz worked on a salary in a box manufactory; that prior to that time and subsequently, until the year 1881, Minnie Metz was in the dressmaking business, and from time to time earned money, which, together with what she had received from her grandmother and what had been saved by her from the sum which her husband gave her for the support of the household during that time, amounted to the sum of $2,000; that during the time from 1871 to 1881, Lorenz Metz worked upon a salary and supported his wife and children and contributed to the fund above mentioned. That in the year 1881, Lorenz Metz started in the business of manufacturing cigar boxes for himself and in his own name, and invested said sum of $2,000 in that business; that the business was conducted, managed and controlled by Lorenz Metz up to and including the year 1887, at which time the profits of the business for those years amounted to $14,000 or $16,000; that in the year 1887, was organized the Chicago Box Company, with a capital stock of $10,000, at $100 per share, of which stock Lorenz Metz had first, twelve shares and afterward twenty shares, which represented the value of $2,000; that the remainder of the stock in that company was owned by a Mrs. Schwartz and one Rosenberger; that Minnie Metz had no interest in said business, but during the year 1887, and a part of the year 1888, worked for the said Chicago Box Company upon a salary of four dollars a week. After the year 1888, Minnie Metz took no part in the business of the Chicago Box Company. That in the year 1884, Lorenz Metz purchased for the sum of $2,500 the property described in the bill, which was, on the 20th day of January, 1894, transferred by him to Frank Rayner, as aforesaid, and that the purchase of said property in 1884

for the sum of $2,500 was made with the profits from the box business carried on by Lorenz Metz from 1881 to 1884, and with money borrowed, which was afterward paid off from the proceeds of said business; that afterward a building was placed upon said lot by the said Lorenz Metz, which building was paid for out of the profits of said business, and by a mortgage placed upon said property; that said mortgage was taken in the name of Lorenz Metz, and was afterward paid off by the profits received by the said Lorenz Metz from the Chicago Box Company. That Lorenz Metz dealt with this property as his own; that all transactions with reference to its sale, mortgage, and other transactions in connection with it were made through Metz. That the interest of Lorenz Metz in said property exceeded the amount of the claim of complainants, and that the evidence is not sufficient to sustain the title of Mrs. Minnie Metz as against the complainants, who had no knowledge of her interest therein. That Lorenz Metz has taken no steps to avoid the irregularities of the sale for the illegality of the exercise of the powers under the mortgage by the mortgagee, and has been negligent of his rights and guilty of laches with respect thereto. That the judgment is in a lien upon the property, and that the note upon which it was entered contained an express waiver and release of all errors which might intervene in the proceedings taken thereunder, and that the note upon which this judgment was rendered was actually signed by Lorenz Metz. That Minnie Metz made, executed and delivered to Newberry a warranty deed to said property, which deed contained full covenants of warranty of the aforesaid property, running from Minnie Metz and Lorenz Metz to Walter C. Newberry. That all the material allegations in said bill of complaint of the brewing company, and the cross-bill of Newberry are proved and true, and that there is due the complainant, the brewing company, out of the $4,155.98 deposited in the Hibernian Banking Association in the name of Graham H. Harris, trustee, the sum of $2,297.97, together with lawful interest at five per cent per annum

thereon from the 17th day of January, 1894, the date of the rendition of said judgment, and also the costs of this suit, including the master's fees on the reference herein, which are hereby taxed at the sum of $250.

The decree then directs that Lorenz Metz pay the amount found due upon the judgment, the costs and master's fees, and in default thereof that said Harris, trustee, pay the same out of the deposit in his name in the banking association, and the balance to appellant, and that upon such payment being made, the brewing company satisfy its judgment of record.    To review this decree this appeal is taken.

GRAHAM H. HARRIS and PENCE & CARPENTER, attorneys for appellant; A. M. PENCE, of counsel.

WINSTON & MEAGHER, attorneys for appellees; FREDERICK R. BABCOCK and SILAS H. STRAWN, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The first question presented is as to whether, upon the facts found by the decree and upon the allegations of the bill and cross-bill, chancery has jurisdiction.  Appellant's counsel argue the case in this regard upon the basis of the facts stated in the bill and found by the master as being true.    The bill alleges that the complainant recovered its judgment against Lorenz Metz "under the name of Lorenz Meetz," and that the note on which the judgment was rendered might be read Metz or Meetz.    The decree finds that the record of said judgment shows the judgment against "Lorenz Meetz," and that the misspelling of the word "Metz" was by reason of a clerical error which appeared upon the *narr.* and *cognovit* upon which the judgment was entered.    There is no question made but that Lorenz Metz is the same person who is called Lorenz Meetz.    The bill alleges and the decree finds that he was the owner of the real estate in question at the time the judgment was rendered.    By virtue of the statute the judgment as soon as entered became a lien upon the real estate.    The decree so

finds, and the case of the brewing company, as well as that of Newberry on his cross-bill, proceeds upon the theory that the judgment, from its rendition, was a lien upon the real estate. That being so, there was nothing to prevent the brewing company from proceeding under an execution to sell the property without a resort to equity. The fact that the real estate was conveyed by Metz to Rayner, by the latter to appellant and by her to appellee Newberry, could make no difference with the brewing company's right to proceed by execution against the real estate to enforce its lien. Davenport v. Karnes, 70 Ill. 465–70; Walters v. Defenbaugh, 90 Ill. 241; Davidson v. Burke, 143 Ill. 139.

Moreover the names Metz and Meetz are so near alike in spelling and pronunciation that under the authorities in this State as well as elsewhere, they are *idem sonans.* They are German names and in pronunciation are very similar in sound, the letter " e " in Metz having very much the same sound as the letter " a " in such English words as " pate," " rate " or " fate." The sound of the letter " e " in Meetz, being doubled, is merely prolonged. That the two words are *idem sonans* is not controverted by appellees.

In Chiniquy v. Catholic Bishop of Chicago, 41 Ill. 148, it was held that Mitchell Allen was *idem sonans* with Michael Allaine, and Otaine Allaine with Antoine Allaine. In McDonald v. People, 47 Ill. 533, McDonnell was held *idem sonans* with McDonald. In Gahan v. People, 58 Ill. 160, the defendant was indicted for an assault upon the person of Mary Danner, though her real name was Mary Dannaher, but a conviction was sustained, the court holding that the names were substantially *idem sonans.* See also Myer v. Fegaly, 39 Pa. St. 429, and 16th Am. & Eng. Ency. of Law, 122, and cases there cited.

The rule in this regard is thus stated in the Encyclopaedia of Law, *supra,* viz:

" Absolute accuracy in spelling names is not required in legal documents or proceedings, either civil or criminal; that if the name as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to commonly accepted methods,

a sound practically identical with the correct name as commonly pronounced, the name, as thus given, is a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error."

For this reason it would seem that the brewing company had a perfect right to enforce its judgment as against the property of Lorenz Metz, notwithstanding the record of the judgment showed his name spelled Meetz.

If, however, there were any doubt because of the different spelling of the name, it was clearly within the power of the Circuit Court to have corrected the clerical error upon notice to the parties in interest and a showing of the facts. In cases of confession of judgment the court has equitable powers. Watson v. Reissig, 24 Ill. 281; Chittenden v. Rogers, 42 Ill. 95; Reedy v. Millizen, 155 Ill. 636–46, and cases cited; Blake v. State Bank, 178 Ill. 182.

Even if it be conceded that the return of the sheriff upon the execution issued on the brewing company's judgment was sufficient *prima facie* to give jurisdiction in chancery on a creditor's bill, which we consider very doubtful, the allegations of the bill and the proof overcome it and show that the complainant's remedy at law had not been exhausted. The return is :

" The within named defendants and no property of the within named defendants found in my county upon which to levy this writ."

Does it mean that the defendants were found by the sheriff, or that they were not found? To say the least, we think the meaning of this language is very doubtful. In any event, it fails to show that a demand was made on the defendants, or either of them. It is a grave question whether the remedy at law is exhausted without a demand having been made of a defendant who is shown, as is Metz, to be a resident of the county where the execution issues. A defendant has the right, under the statute, to turn out real estate before his personalty shall be taken. But this is not controlling. Equity will not enforce a legal demand until the creditor shall have first exhausted his remedy at

law. That fact, as a general rule, is essential to chancery jurisdiction. Detroit, etc., Mills v. Ledwidge, 162 Ill. 305, and cases cited; Durand v. Gray, 129 Ill. 9–17, and cases cited.

The bill alleges, in substance, that when the judgment was recovered Lorenz Metz was seized of real estate in Chicago, describing it specifically, and that subsequent to the rendition of the judgment he conveyed it to Rayner, the latter conveyed it to appellant, and that she, her husband joining, conveyed to Newberry. The latter held the title at the time the bill was filed, appellees claim, and it was a fact that the judgment was then a lien on this realty and no reason is shown why the brewing company could not have obtained an *alias* execution, levied it upon the real estate and sold the same to satisfy the judgment. These facts overcome the return of the sheriff, even though it was *prima facie* sufficient to give equity jurisdiction.

The brewing company, therefore, having at the time the bill was filed a complete and adequate remedy at law, a court of chancery had no jurisdiction to entertain the bill, and it should have been dismissed.

There being no jurisdiction in chancery on the original bill it follows that the cross-bill should also have been dismissed unless it contains matters of equitable cognizance. Houston v. Maddux, 179 Ill. 377–91, and cases cited.

The evidence shows that the same attorneys who represented the brewing company in the confession of judgment, acted for Newberry and examined the abstract of title when he purchased from appellant. These attorneys, knowing of the judgment, Newberry, for whom they were acting, is chargeable with their knowledge and must be held to have taken the title knowing it was subject to the lien of the judgment.

Moreover, Mr. Newberry has no such standing in equity as would enable him to maintain his cross-bill. He has no right of action against appellant on his covenant of warranty until he has suffered a loss, except for nominal damages. Richard v. Bent, 59 Ill. 38–43; Brand v. Henderson, 107 Ill. 146.

Metz v. McAvoy Brewing Co.

The case of Coffman v. Scoville, 86 Ill. 300-6, relied on by appellees' counsel, is not, in our opinion, applicable to the facts here. If appellant sought to enforce payment by foreclosure, a different question would be presented. She is asking no relief, and we therefore think the cross-bill must fall with the original bill.

It is contended by appellant that the sale under the chattel mortgage mentioned in the statement did not have the effect of passing title in the mortgaged property to the brewing company, and that it should be charged with the full value thereof, which, the evidence tends to show, although it is not found by the decree except by the general affirmance of the master's report, was worth at least $500, if not as high as $3,000. We think this contention is untenable. A provision in the mortgage is to the effect that the mortgagee may become the purchaser of the mortgaged property at its own sale. The evidence shows that the sale was conducted according to the provisions of the mortgage, and was in all respects regular, the mortgagor and said Lorenz Metz having been notified of the time and place of sale. This had the effect of vesting the title in the mortgagee. Jones on Chat. Mort., Sec. 791, and cases cited; Griffin v. Marine Co., 52 Ill. 130-8; McConnell v. People, 84 Ill. 584; Goodell v. Dewey, 100 Ill. 308.

The cases cited by appellant are not in point. The mortgagor in this case, by the express terms of that instrument, gave to the mortgagee the right to become the purchaser, and neither he nor appellant can now question that right. Her position is no better than that of the mortgagor.

The decree is reversed, and the Circuit Court is directed to dismiss the bill and cross-bill for want of equity. Reversed with directions.